**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

HASSOUN ALKHALAF,

    *Petitioner*,

    v.                                   No. 1:26-cv-01271-SMD-LF

RAY CARNES,[1] *et al.*,

    *Respondents*.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Hassoun Alkhalaf's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus ("Petition"), filed on April 23, 2026. Doc. 1. Petitioner, a citizen of Syria, entered the United States without inspection on November 20, 2024 and was subsequently apprehended by Border Patrol agents. Doc. 6-2 at 3.

On November 21, 2024, an immigration judge found Petitioner inadmissible under Immigration and Nationality Act ("INA") Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) and denied Petitioner's applications for asylum, withholding of removal, and deferral of removal. The immigration judge ordered Petitioner be removed to Syria. Doc. 6-3 at 1. The removal order became final on December 22, 2025. Doc. 6-4 ¶ 5.

According to Respondents, the Enforcement and Removal Operations ("ERO") Office has taken steps to effectuate Petitioner's removal, including requesting the Syrian Embassy to issue a travel document. *Id.* ¶¶ 7–8. On December 24, 2025, ERO requested a travel document via HQ-Removal International Operations ("HQ-RIO") and subsequently requested an update on February

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), an action does not abate when a public officer who is a party in official capacity resigns or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party, and any misnomer not affecting the parties' substantial rights must be disregarded. While the court may order substitution at any time, the absence of such an order does not affect the substitution.

10, 2026.  The travel document has not been issued due to the closure of Syria airspace.  ERO requested another status update from HQ-RIO on March 8, 2026, and no response has been received.

Respondents acknowledge that ERO's efforts have been unsuccessful because of the ongoing airspace closure in Syria.  Doc. 6 at 2.  Consequently, Petitioner has remained in detention for over eight months, approximately seven of which accrued after his removal order became final.

## LEGAL STANDARD

An application for habeas corpus pursuant to § 2241 may be granted only if the petitioner "is in custody in violation of the Constitution, or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal.  *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that the district court properly exercised jurisdiction over a habeas petition challenging continued detention without a bonding hearing); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## DISCUSSION

### I.    The Court Has Subject Matter Jurisdiction.

The Court has subject matter jurisdiction to review Petitioner's claims.  *See Tuck v. United Serv.'s Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) (stating that a federal court has an independent obligation to assure itself of subject matter jurisdiction).

Respondents invoke 8 U.S.C. § 1252(g) to argue this Court lacks jurisdiction.  *See* Doc. 6 at 4.  They argue § 1252(g) bars judicial review because the government detains Petitioner to execute his removal order, pointing to cases where courts have declined to exercise jurisdiction

over a challenge to revocation of release. *See id.* (citing *Tazu v. Att'y Gen. of United States*, 975 F.3d 292, 298 (3d Cir. 2020).

Respondents correctly note that § 1252 bars courts from reviewing the merits of a removal determination. *See id.*; *Vaupel v. Ortiz*, 244 F. App'x 892, 895 (10th Cir. 2007). Here, however, Petitioner does not seek that type of review.

Petitioner does not challenge the substance of a removal order or any findings regarding removability. Instead, he challenges his continued detention as a violation of the Due Process Clause. That constitutional claim differs from a challenge to a removal determination. *See Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008) (citing *Demore*, 538 U.S. at 517).

Petitioner's due process claim therefore does not arise "from the implementation or operation of the expedited removal order." *See Turgerel v. Mukasey*, 513 F.3d 1202, 1205 (10th Cir. 2008); *Vaupel*, 244 F. App'x at 895; *Mursalin v. Dedos*, No. 1:25-CV-00681-MIS-JMR, 2025 WL 3140824, at *8 (D.N.M. Nov. 10, 2025). The jurisdiction bar under § 1252 does not apply.

Courts routinely distinguish detention challenges from challenges to removal orders. As one court explained, "[w]here a petitioner 'does not challenge any final order of removal, but challenges his detention prior to the issuance of any such order' the jurisdiction-stripping provisions do not apply." *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *8 (S.D. Cal. Oct. 1, 2025) (quoting *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008)). The Court finds that reasoning persuasive. Section 1252 therefore does not deprive the Court of subject matter jurisdiction over Petitioner's habeas petition.

## II.    Statutory Framework: 8 U.S.C. § 1231

The parties do not dispute that 8 U.S.C. § 1231 governs Petitioner's custody, since his removal order became administratively final on December 22, 2025. *See* Doc. 6-4 at 1.

Under § 1231(a)(1), the government has a 90-day period in which to remove a noncitizen after a removal order becomes final.  If the government is unable to effect removal within that 90-day period, continued detention becomes discretionary.  *See* 8 U.S.C. § 1231(a)(6).  Indefinite detention, however, is not permitted.  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention.").

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  *Id.* at 699–700.  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  *Id.* at 699.  The Court established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts."  *Id.* at 701.  After this six-month period, if the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing. *Id.*

Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as unreasonable per *Zadvydas*.  *Vo v. Bondi*, No. 2:25-CV-02244, 2025 WL 3653722, at *3 (W.D. Wash. Dec. 17, 2025) ("The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see, e.g.*, *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025); *Bulle v. Wesling*, No. 26-CV-019, 2026 WL 183840, at *4 (D.R.I. Jan. 23, 2026).

III.    **Petitioner's Continued Detention Violates 8 U.S.C. § 1231 Because His Removal Is Not Reasonably Foreseeable.**

Respondents note that once the presumptively constitutional six-month period under *Zadvydas* elapses, Petitioner bears the burden to show his detention has become prolonged and potentially unlawful because there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See* Doc. 6 at 6. The Court finds that Petitioner has met his initial burden of proof, and Respondents have failed to rebut this showing.

First, Petitioner's detention exceeds the presumptively constitutional six-month limit. His removal order became final on December 22, 2025, and he has been detained for more than seven months after that. *See id.* at 2. During those months, the record reflects no progress toward removal, as there is no identifiable third country, no relevant correspondence, and no issued travel documents. *See* Doc. 6-4.

Tenth Circuit case law supports this conclusion. In *Abiodun v. Musakey*, the court distinguished *Zadvydas*, noting that the *Zadvydas* petitioners faced indefinite detention because "their countries of origin would not accept them." 264 F. App'x 726, 729 (10th Cir. 2008). By contrast, the petitioner's country of origin in *Abiodun* had issued travel documents, and ICE had successfully placed the petitioner on chartered flights, leading the court to find a likelihood of removal in the foreseeable future. The present case is analogous to *Zadvydas* and distinguishable from *Abiodun*. Here, Petitioner has shown that his removal is unlikely in the reasonably foreseeable future, and Respondents have failed to rebut that showing.

Courts in this district have also reached similar conclusions. In *Ndou v. Noem*, the court found no likelihood of removal because no travel documents had been issued and there was no indication that the destination countries were cooperating with immigration authorities. No. 2:26-CV-00220-KWR-GJF, 2026 WL 686564, at *4 (D.N.M. Mar. 11, 2026). Similarly, in *Jimenez*

*Chacon v. Lyons*, the court found removal was not reasonably foreseeable because the government failed to show that any third country was likely to accept the petitioner.  811 F. Supp. 3d 1299, 1310 (D.N.M. 2025) (rejecting the government's argument that a criminal record justifies prolonged detention to secure third country removal, noting that *Zadvydas* itself involved petitioners with significant criminal histories).

Respondents rely on *Tshiteya v. Crawford* to argue that courts typically find removal is not reasonably foreseeable when "no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time."  Doc. 6 at 6 (citing *Tshiteya v. Crawford*, 2013 WL 6635096, at *4 (E.D. Va. Dec. 16, 2013)).  These are precisely the facts present in this case. Petitioner cannot be removed to Syria, no third country has agreed to accept him, and Respondents' removal efforts have gone unanswered.  *See* Doc. 6-4.

**IV.    Alternatively, Petitioner's Continued Detention Violates Due Process.**

The Court finds that Petitioner's continued detention violates his Fifth Amendment rights. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251–52 (D.N.M. 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner is at least entitled to the "procedures authorized by Congress."  *Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001); *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential

6

standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy."). Where detention becomes indefinitely prolonged, "[s]uch imprisonment is impermissible punishment rather than detention pending deportation." *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1385–90 (10th Cir. 1981); *Mardanpour v. Warden*, No. 2:26-CV-00550-MIS-LF, 2026 WL 963164, at *3 (D.N.M. Apr. 9, 2026).

Considering Petitioner's prolonged detention, the Court finds that due process requires his immediate release. Respondents remain free to subject Petitioner to appropriate release conditions and to continue ongoing removal proceedings.

## CONCLUSION

It is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) Respondents **SHALL** release Petitioner within **48 hours** of this Order being entered;

3) Respondents **SHALL** facilitate Petitioner's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

4) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release. This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements). Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

5) Respondents **SHALL NOT** remove Petitioner to any third country without first providing him with constitutionally compliant procedures;

6) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

8